**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| **RELIABLE TRACTOR, INC., a** | : | |
| **Georgia corporation, d/b/a** | : | |
| **STAFFORD** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No.** |
| | : | **7:07-CV-00043-HL** |
| **v.** | : | |
| | : | |
| **JOHN DEERE CONSTRUCTION &** | : | |
| **FORESTRY COMPANY, a Delaware** | : | |
| **corporation, as successor to JOHN** | : | |
| **DEERE INDUSTRIAL EQUIPMENT** | : | |
| **COMPANY,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## ORDER

This matter is before the Court on Plaintiff Reliable Tractor, Inc.'s Motion for

Summary Judgment (Doc. 6) and Defendant John Deere Construction & Forestry

Company's Motion to Dismiss (Doc. 12).  For the following reasons, Reliable's

Motion for Summary Judgment is granted and Deere's Motion to Dismiss is denied.

## I.    BACKGROUND

On February 20, 1984, Reliable Tractor, Inc. and John Deere Construction &

Forestry Company executed two dealer agreements.  One agreement appointed

Reliable as an authorized dealer of Deere's line of utility equipment, and the other

appointed Reliable as an authorized dealer of Deere's line of forestry equipment.

The terms of appointment in the two agreements are identical.  The agreements do not contain a definite term of duration, and both contain a provision at paragraph 3(b) that allows either party to terminate the agreements without cause on 120 days notice.  Paragraph 2 allows for immediate termination for cause, and contains a list of five circumstances that would constitute cause for termination. Among others, grounds for termination include a change in the location of the dealer's principal place of business without the prior consent of the company, or a "[w]ithdrawal of an individual proprietor, partner, major shareholder, or the manager of the dealership or substantial reduction in interest of a partner or major shareholder, without the prior written consent."  The agreements provide that they shall be effective upon execution by Deere, and both state that they were accepted by Deere's Vice President and General Manager in Timonium, Maryland.  At the time the parties entered into the dealer agreements, Maryland did not have any law that prohibited the termination of a dealer agreement without cause.

In 1987, Maryland enacted the Equipment Dealer Contract Act (the "EDA"). See Md. Code Ann., Com. Law §§ 19-101 to 19-305.  In 1998, the Maryland Legislature amended the EDA to provide that equipment suppliers, such as John Deere, cannot terminate a dealer agreement "without good cause" (the "good cause provision").  See Md. Code Ann., Com. Law § 19-103.  From the execution of the 1984 agreements until March 2007, both parties continued to perform under the agreements, and neither party attempted to terminate them.

2

On March 27, 2007, Deere issued a notice of termination to Plaintiff, stating that it was going to terminate the dealer agreements in 120 days.  The notice does not purport to terminate the agreements for good cause, and the letter expressly invokes paragraph 3(b) of the original agreements in notifying Reliable of the decision to terminate.  The letter does not contain a single mention of paragraph 2.

On May 10, 2007, Reliable filed suit in this Court against Deere.  In its Verified Complaint, Reliable asserts a claim for breach of contract under the EDA's good cause provision (Count I), a claim for a declaratory judgment that Deere's attempted termination is unlawful under the EDA (Count II), a claim for preliminary and permanent injunctive relief preventing Deere from terminating the agreements (Count III), a claim for breach of contract based on the allegation that it is implied that the agreements themselves required good cause for termination (Count IV), and a claim for recoupment (Count V).

On May 31, 2007, Reliable filed the Motion for Summary Judgment that is currently before the Court.  In its Motion, Reliable seeks summary judgment on Count II of its Complaint.  Deere responded to Reliable's Motion by filing a consolidated Response and Motion to Dismiss Amended[1] Complaint.  Deere contends that Reliable's Complaint should be dismissed because it is premised on

---

[1]On May 18, 2007, Reliable filed an Amended Complaint (Doc. 5) that simply restated the jurisdictional statement in paragraph 7 of the original Complaint.  The amendment did not change any other aspects of the Complaint.

the EDA's good cause provision, and for several reasons that statute does not apply to the agreements at issue.  First, under Georgia's choice of law analysis, Georgia law, not Maryland law, applies to the 1984 agreements.  Second, even if Maryland law applies, the good cause statute only applies to contracts entered into after the effective date of the statute; it does not apply to contracts entered into before that date.  Third, even if the good cause statute does apply, such an application violates the Contracts Clause of the United States Constitution.  Fourth, even if the good cause statute's application is constitutional, there are genuine issues of material fact as to whether under the EDA Deere did in fact have good cause to terminate the agreements, or at a minimum, Deere should be allowed to engage in discovery to determine whether good cause exists.[2]

Applying Georgia's choice of law rules, the Court determined that Maryland law applied because the agreements were entered into there.  As a result, on December 21, 2007, this Court entered an Order (Doc. 33) certifying to the Maryland Court of Appeals the following question: "Whether the Maryland Equipment Dealer Act's good cause provision applies to the termination of a dealer agreement where the dealer agreement was entered into before the good cause provision was enacted

---

[2]Deere also argued that Reliable's Motion should be denied because it was based on inadmissible evidence.  Specifically, Reliable's Motion relied on its Verified Complaint.  Deere argued that the Complaint was not properly verified because the verification was not based on personal knowledge.  Reliable promptly remedied this defect by filing the Declarations of Denean Stafford (Doc. 17) and John Wall (Doc. 19).

4

but the alleged without cause termination occurred after the good cause provision was enacted?"

On September 15, 2008, the Maryland Court of Appeals issued its Opinion (Doc. 37) answering the certified question.  The Court of Appeals held that the EDA's good cause provision did apply to the agreements, and that applying the law to the agreements was a prospective, rather than a retroactive, application of the law. Based on the open ended nature of the agreements and the 120 day notice of termination period, the Court of Appeals reasoned that the agreements were a series of 120 day agreements that continued to automatically renew by the failure of either party to give notice.  Because Deere did not give notice of termination within 120 days of the passage of the EDA's good cause provision, the Court of Appeals held that after the provision was enacted "the parties effectively renewed their contracts consistent with the applicable law in effect at the time."  (Doc. 37 at 8.)

After the Maryland court's decision, this Court held a telephone conference to determine the current positions of the parties in light of the decision.  Deere informed the Court that it would like to file a supplemental brief, and the Court granted Deere's request.  On December 1, 2008, Deere filed its Supplemental Memorandum of Law. Deere's Supplemental Memorandum raises three new arguments.  First, applying the doctrine of lex loci contractus, Deere argues that Maryland law does not apply to the contracts that were renewed after Deere relocated its headquarters from Maryland to Illinois in 1991. Deere contends that once it left Maryland, the contracts

5

were renewed in a state other than Maryland, and thus some other state's law applies.  Second, applying Maryland law to agreements renewed after Deere left Maryland would result in an unconstitutional extraterritorial application of Maryland law.  In particular, application would violate the United States Constitution's Full Faith and Credit Clause and the Due Process Clause of the Fourteenth Amendment.  Third, the Maryland Court of Appeals's decision struck paragraph 3(b) of the agreements, rending the agreements too indefinite to enforce.  Even if the agreements are not too indefinite, it contends that the Court must supply a reasonable duration "short of infinite."

On May 19, 2009, the Court held oral argument on the pending Motions.  This Order disposes of the pending Motions and holds that Reliable is entitled to summary judgment on Count II of its Complaint.

## II.     DISCUSSION

### A.     Reliable's Motion for Summary Judgment

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When considering a motion for summary judgment, the court must evaluate all of the

6

evidence, together with any logical inferences, in the light most favorable to the nonmoving party.  Id. at 254-55.  The court may not, however, make credibility determinations or weigh the evidence.  Id. at 255; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  If the moving party meets this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to a judgment as a matter of law.  Id. at 324-26.  This evidence must consist of more than mere conclusory allegations.  See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).  Under this scheme, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

> 1. **Maryland law applies to the 1984 agreements, as well as all subsequent "renewals"**

When subject matter jurisdiction is premised on diversity of citizenship, the

substantive law of the forum state applies.  Erie R. Co. v. Tompkins, 304 U.S. 64,

78 (1938).  The substantive law of the forum state includes that state's choice of law

rules.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 491 (1941).  The forum

state in this case is Georgia.  In contracts cases, Georgia follows the rule of lex loci

contractus in determining which state's law applies to the contracts at issue.

Convergys Corp. v. Kenner, 276 Ga. 808, 812, 582 S.E.2d 84, 87 (2003); Gen. Tel.

Co. of Se. v. Trimm, 252 Ga. 95, 96, 311 S.E.2d 460, 462 (1984).  Under the lex loci

contractus rule, contracts "'are to be governed as to their nature, validity, and

interpretation by the law of the place where they were made, except where it

appears from the contract itself that it is to be performed in a State other than that

in which it was made, in which case ... the laws of that sister State will be applied.'"

Convergys Corp., 276 Ga. at 811 n.1, 582 S.E.2d at 86 n.1(quoting Trimm, 252 Ga.

at 95, 311 S.E.2d at 461).  A contract is considered to be made in the state where

the last act necessary for formation of the contract occurred.  Trimm, 252 Ga. at 95,

311 S.E.2d at 461.

In this case, the last act necessary for formation of the 1984 agreements

occurred in Maryland.  The agreements state that they "shall be effective upon

execution by the Company," and then recite that the agreements are "[r]eceived,

subject to acceptance at the Company's office in Baltimore."  (Pla.'s Compl., Exs.

A & B) (emphasis in originals).  The agreements both expressly state that they were

accepted and signed by Deere's Vice-President and General Manager in Maryland.

8

As a result, the contracts were entered into in Maryland.

Deere does not dispute that the contracts were made in Maryland. Rather, it contends that an exception to the lex loci rule applies because it appears from the agreements themselves that they were to be performed in Georgia, not Maryland. Deere's argument might hold water if the agreements demonstrated that both parties were to perform their obligations in Georgia, but the only thing that is clear from the agreements is that Reliable was to perform in Georgia through the operation of its dealership. The agreement is silent on where Deere was to perform. Presumably, Deere would perform some, if not all, of its obligations in Maryland because that is where Deere's company offices were at the time. In a case such as this where the contracts only demonstrate that one of the parties is to perform in a state other than the state where the contract was made, this Court thinks that the state of contracting controls. Were this Court to accept Deere's argument, the exception would swallow the rule because the place of performance would always control; the state of contracting's law would apply only if it was the same state where both parties were to perform. Because the agreements were entered into in Maryland and it is not clear from the agreements themselves that the agreements were to be performed in a state other than Maryland, this Court holds that Maryland law applies to the 1984 agreements.[3]

---

[3]It is worth noting that in a different case in another jurisdiction Deere argued that under Virginia's choice of law rules Maryland law applied to a dealer agreement. See John Deere

Maryland law also applies to all subsequent "renewals." Deere contends that even assuming Maryland law applies to the original agreements, it cannot apply to agreements that were renewed after Deere moved its offices from Maryland to Illinois. Deere's argument is based on the Maryland Court of Appeals's holding that the open-ended nature of the agreements, coupled with the 120 day termination period, created a series of 120 day perpetually renewing contracts that continued to renew until one of the parties gave notice of termination. According to Deere, Maryland law cannot apply to agreements renewed after Deere left Maryland in 1991 because after it left the state the agreements could not have been renewed there.

Deere's argument might make sense if the parties actually executed a formal renewal agreement in a state other than Maryland, but they did not. Instead, the Maryland court utilized a legal fiction to hold that the open-ended duration of the agreements and the 120 day termination period created a series of perpetually renewing agreements that automatically renewed on their own terms by the failure

_____

Const. Equipment Co. v. Wright Equipment Co., Inc., 118 F. Supp. 2d 689 (W.D. Va. 2000). Similar to Georgia law, Virginia law provides that "the nature, validity, and interpretation of a contract is governed by the law of the place where it was made, unless there is an express intention to the contrary." Id. at 692. The only difference between this rule and Georgia's is that Georgia's exception to the lex loci rule is phrased slightly differently, stating that the law of the state of contracting controls unless it appears from the contract itself that it is to be performed in a different state. In the Wright case, Deere prevailed in persuading the district court that Maryland law applied to contracts that were entered into in Maryland by Deere and a Virginia dealer. Reliable argues that Deere's position in that case estops it from arguing in this case that Maryland law does not apply. Because Virginia's choice of law rule is phrased differently than Georgia's, the Court does not believe that Deere is estopped from taking its current position, though it is certainly a close call.

of either party to give notice.  Georgia's lex loci rule provides that the state of contracting is the state where the last act necessary for formation of the contract occurred.  <u>Trimm</u>, 252 Ga. at 95, 311 S.E.2d at 461.  The last act necessary for the formation of the agreements in this case occurred in Maryland in 1984.  Once the agreements were executed in Maryland in 1984, the agreements continued to automatically renew by their own terms until one of the parties gave notice of termination.  No further acts were necessary to form a new or renewed contract.  Thus, contrary to Deere's assertion, the state of contracting is not the state where the parties "renewed" their agreements by failing to give notice of termination.  Under Georgia's choice of law rules, Maryland is the state of contracting, the Maryland court's legal fiction notwithstanding.[4]

### 2.    The EDA's good cause provision applies to the agreements

The Maryland Court of Appeals held that EDA's good cause provision applies to the agreements.  As this is the highest court in the state of Maryland, Md. Code Ann., Cts. & Jud. Proc. § 1-301, this Court is bound to follow its decision.  <u>Veale v. Citibank, F.S.B.</u>, 85 F.3d 577, 580 (11th Cir. 1996) ("In matters of state law, federal

---

[4]This is not to mention that Deere's position would frustrate the policy behind the Georgia Supreme Court's decision to continue to adhere to the lex loci rule.  In <u>Trimm</u> the Georgia Supreme Court rejected the adoption of a different choice of law rule in contracts cases because the other approaches were "neither less confusing nor more certain than our traditional approach."  <u>Trimm</u>, 252 Ga. at 96, 311 S.E.2d at 462.  Deere's position invites confusion and uncertainty.  Acceptance of Deere's argument would require a determination of where each party failed to give notice.  Not only would the Court have to determine where each of these omissions occurred, but, unless both parties' omissions occurred in the same state, the Court would then have to determine which party's omission dictates which state's law applies.

courts are bound by the rulings of the state's highest court.").

### 3.   Application of the good cause provision is not unconstitutional

Deere argues that application of the EDA's good cause provision violates the Contracts Clause, the Due Process Clause of the Fourteenth Amendment, and the Full Faith and Credit Clause.   The Court will address each of these arguments in turn.

The Contracts Clause of the United States Constitution states, "No State shall...pass any...Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1.  In determining whether a law violates the Contracts Clause, the first inquiry is whether the law operates as a substantial impairment to an existing contractual relationship.  Energy Reserves Group, Inc. v. Kansas Power and Light Co., 459 U.S. 400, 411 (1983).   Resolution of this threshold issue requires an analysis of three elements: (1) whether there is a contractual relationship; (2) whether a change in law impairs that contractual relationship; and (3) whether the impairment is substantial. General Motors Corp. v. Romein, 503 U.S. 181, 186 (1992).

In this case, the Contracts Clause is not implicated because the law at issue in this case is being applied prospectively, not retroactively.  Under Maryland law, the dealer agreements were a "succession of renewable contracts lasting 120 days." (Doc. 37 at 10.)  Neither party in this case attempted to terminate the agreements within 120 days of the law's enactment.   As a result, the dealer agreements

12

automatically renewed after the law was passed.  Applying the law to agreements that the were renewed after the law was passed does not impair an existing contractual relationship.  See Northshore Cycles, Inc. v. Yamaha Motor Corp., U.S.A., 919 F.2d 1041, 1043 (5th Cir. 1990) (observing that the Contracts Clause would not be violated by applying a law to agreements that existed at the time the law was passed but were subsequently renewed after the law was enacted).  Accordingly, application of the good cause provision to the dealer agreements in this case does not violate the Contracts Clause.

Next, Deere argues that applying Maryland law to dealer agreements that were renewed after Deere moved its offices from Maryland constitutes an extraterritorial application of Maryland law and thus violates the Full Faith and Credit Clause and the Due Process Clause of the Fourteenth Amendment.  This argument is premised on Deere's contention that the parties renewed or re-executed the agreements outside the state of Maryland.  This premise is flawed.  The parties never affirmatively renewed or re-executed the agreements; the agreements automatically renewed without the necessity of any action from either party.  The only affirmative act of contract execution that took place in this case occurred in Maryland in 1984.  The Court fails to see how the automatic renewal of those contracts after Deere left the state of Maryland renders the application of Maryland law extraterritorial.

**4.    There are no genuine issues of material fact that warrant the denial of summary judgment**

Deere argues that there are two genuine issues of material fact that prevent the entry of summary judgment.  First, there is an issue as to where the agreements were to be performed, and thus it would be inappropriate at this stage to conclude that Maryland law applies.  Second, there is an issue as to whether Deere possessed good cause to terminate the agreements.  Each of these arguments is without merit.

Georgia's lex loci rule provides that the governing law is the state of contracting, unless "it appears from <u>the contract itself</u> that it is to be performed in a State other than that in which it was made, in which case ... the laws of that sister State will be applied.'" <u>Convergys Corp.</u>, 276 Ga. at 811 n.1, 582 S.E.2d at 86 n.1(quoting <u>Trimm</u>, 252 Ga. at 95, 311 S.E.2d at 461).  Deere looks beyond the four corners of the dealer agreements in an attempt to persuade the Court that there is a genuine issue of material fact as to where the agreements are to be performed.  Those extraneous facts are irrelevant to the choice of law analysis.  In determining whether the agreements are to be performed in a state other than Maryland, this Court is limited to a review of the face of the dealer agreements.  As stated above in the choice of law analysis, it is not apparent from the agreements themselves that they were to performed in a state other than Maryland.

There is no issue of material fact as to whether Deere possessed good cause

to terminate the agreements.  The termination letter that Deere issued to Reliable on March 27, 2007, explicitly stated that Deere was terminating the agreements "pursuant to paragraph 3(b)" of the agreements.  (Pla.'s Compl, Ex. C at 2.) Paragraph 3(b) of the dealer agreements is the provision that allows either party to terminate the agreements without cause, and it is the same contractual provision that the Maryland court declared invalid.  In addition, in its Verified Complaint,[5] Plaintiff asserts that at the time the Deere representatives delivered the termination letter, the representatives stated that the termination was "dictated by a purported business model under which Deere deals only with businesses that sell John Deere products exclusively."  (Pla.'s Compl. ¶ 35.)  This justification does not constitute good cause under the EDA, and the EDA expressly prohibits suppliers from "coerc[ing] a dealer into refusing to purchase equipment manufactured by another supplier."  Md. Code Ann., Com. Law § 19-301(3).

Reliable has carried its initial burden of establishing the absence of a genuine issue of material fact that Deere's attempted termination was without cause.  The burden thus shifts to Deere to go beyond the pleadings and point to something in the

---

[5]Deere originally objected to consideration of the Verified Complaint as summary judgment material because the verification was not based on personal knowledge.  As stated, supra note 2, Reliable subsequently remedied that defect.  Thus, the Verified Complaint can be considered in ruling on Reliable's Motion for Summary Judgment.  See Fowler v. S. Bell Tel. & Tel. Co., 343 F.2d 150, 154 (5th Cir. 1965) (holding that verified pleadings are appropriate summary judgment material if the pleadings satisfy the standards for affidavits set forth in Rule 56(e)).

record that establishes a genuine issue of material fact."  <u>Celotex Corp.</u>, 477 U.S.

at 324-26.  Deere has not carried this burden.

Deere contends that the record demonstrates that it had two reasons to

terminate the agreements for cause.  Deere first points to the portion of the

termination letter that references the fact that Reliable acquired another company

that operates a dealership in Virginia.  Deere contends that Reliable's acquisition of

the Virginia dealership breached the dealer agreements because Reliable did not

obtain Deere's prior consent as required by the paragraph of the agreements that

states Deere's prior consent is required before Reliable operates "a facility at any

other location for displaying, selling, renting, leasing, or servicing of new or used

<u>goods</u>."  (Pla.'s Compl., Exs. A & B at 4, ¶ 1(j)) (emphasis added).  The EDA defines

"good cause" as the failure of a dealer to "comply with requirements imposed on the

dealer by a contract if the requirements are not different from requirements imposed

on other dealers similarly situated in the State."  Md. Code Ann., Com. Law § 19-

101(g).  Deere contends that Reliable's acquisition of the Virginia dealership violated

the agreements and thus gave rise to good cause for termination of the agreements.

Deere's argument is without merit for at least two reasons.

First, Deere has not pointed to anything in the record that demonstrates that

the alleged failure of Reliable to obtain its prior approval was an actual justification

for the termination of the agreements.  Deere relies solely on the termination letter

in arguing that a genuine issue of material fact exists as to whether it terminated the

16

agreements because of Reliable's acquisition of the Virginia company without its prior approval.   That termination letter, however, only makes reference to the acquisition and states that "John Deere has serious concerns about continuing its dealer relationship with any dealer where John Deere plays a decreasing, rather than increasing, role in the overall business of the dealership."  (Pla.'s Compl., Ex. C at 1.)   Nowhere in the letter does Deere state that it was terminating the agreements based on Reliable's failure to obtain its pre-approval for the acquisition, and nowhere does it invoke the for cause termination provisions of the agreements. Rather, the letter simply mirrors the allegation in Plaintiff's Verified Complaint that Deere representatives stated that its termination decision was based on Deere's decision to shift to a business model where dealers sell exclusively John Deere products.  Deere's attempt to now assert that Reliable's failure to obtain its prior approval for the acquisition of the Virginia company was the reason for its termination decision is simply a post hoc justification for its termination decision, and does nothing to explain its conduct at the time it made the termination decision.

Second, the agreements state that Reliable only has to obtain Deere's consent prior to establishing, maintaining, or operating a facility that deals in "new or used goods."  (emphasis added).   The agreements expressly define "Goods," with a capital "G," as John Deere equipment.   Deere seeks to avoid this definition by arguing that the provision of the agreements that Reliable allegedly violated use the term "goods" with a lower-case "g."  According to Deere, "goods" includes every

17

conceivable good, not just Deere equipment.   The Court rejects Deere's interpretation.  Notably, the first page of text for each of the agreements expressly states that "this Agreement pertains only to Goods."  (Pla.'s Compl., Exs. A & B at 2.)  Giving "goods" the expansive meaning that Deere advocates seems to be in clear conflict with this express limitation that the agreements only pertain to "Goods." At a minimum, the meaning of "goods" is ambiguous.  Where language in a contract is ambiguous, the language must be construed against the drafter, which in this case is Deere.[6] Canaras v. Lift Truck Svcs, Inc., 272 Md. 337, 356, 322 A.2d 866, 876-877 (1974).  Construing the ambiguity against Deere, this Court finds that the term "goods" in the provision at issue has the same meaning as "Goods."  As such, Reliable was not required to obtain Deere's approval before acquiring a Virginia dealership that does not deal in Deere equipment.

Deere's second asserted "good cause" justification for termination is Reliable's merger with Stafford Tractor Company, "which, depending on the effect of the merger on the ownership of Reliable stock, could have involved a substantial reduction in the interest of a major shareholder of Reliable."  (Deere's Resp. Br. at 15) (emphasis added).  The EDA defines good cause as "a substantial reduction in interest of a partner or major shareholder, without the prior written consent of the supplier."  Md. Code Ann., Com. Law § 19-102(7).  By its own admission, however,

---

[6]The agreements in this case are form contracts bearing the John Deere logo.

Deere does not know whether Reliable's merger with Stafford resulted in the substantial reduction in interest of a major shareholder; it simply states that it "could have."  If Deere does not know whether this is true, then this newly[7] asserted justification clearly could not have served as a basis for its termination decision. Deere is again simply engaging in post hoc justifications in an attempt to meet the good cause standard.  The purpose of this litigation is not to see how creative Deere can be in concocting these explanations; rather, the purpose is to determine whether Deere did in fact attempt to terminate the agreements for good cause.  As Deere has not pointed to anything in the record that demonstrates that its actual termination decision was based on good cause, Reliable is entitled to summary judgment.

### 5.    Denial of Reliable's Motion is not warranted by the fact that discovery has not commenced

Deere argues that summary judgment should be denied because discovery has not commenced.  There is no "blanket prohibition on the granting of summary judgment motions before discovery."  Reflectone, Inc. v. Farrand Optical Co., 862 F.2d 841, 843 (11th Cir. 1989).  Federal Rule of Civil Procedure 56(f) allows a party opposing summary judgment prior to discovery to move the court for an order permitting discovery necessary to oppose the motion.  Id.  However,

---

[7]Nowhere it the termination letter, which is the only document Deere relies on in making this argument, does Deere assert that its decision is based on this reason.  The letter simply references the merger.

the party seeking to use Rule 56(f) may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but rather he must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.

Id. (internal quotations omitted).

In this case, Deere, again overlooking the fact that the relevant inquiry is into the actual basis for its termination decision, asks that the Court deny summary judgment so that discovery can commence, at which point it might be able to uncover some factual basis for a finding of good cause. Specifically, Deere asserts that discovery is needed to determine whether Reliable's merger with Stafford resulted in a substantial reduction in the interest of a major shareholder in the dealership. As noted in the previous subsection of this Order, Deere admits that it does not know whether the merger resulted in such a reduction in the interest of a shareholder. It is apparent that this unknown fact could not have served as the basis for its termination decision. Allowing Deere to engage in a fishing expedition in an attempt to provide support for its post hoc justifications will do nothing to address the issue of Deere's actual justification for its termination decision. Deere's Rule 56(f) request is denied.

### 6.    The Maryland Court of Appeals's decision does not render the agreements too indefinite to be enforced

Last, Deere argues that the Maryland court's decision renders the agreements too indefinite to be enforced.  According to Deere, paragraph 3(b) of the agreements supplied the duration of the contracts by allowing either party to terminate the agreements on 120 days notice.  Deere contends that the Maryland court struck that paragraph from the agreements, leaving the contracts without a definite term of duration and thus too indefinite to be enforced.

This Court is bound by the Maryland court's determination that the agreements are not too indefinite to be enforced.  Deere raised this argument in a Motion for Reconsideration before the Maryland Court of Appeals after the court issued its decision.  On October 31, 2008, the Maryland Court of Appeals issued a brief order stating that it had considered Deere's Motion and that it was denied.  As previously stated, on questions of Maryland law this Court is bound by the decision of Maryland's highest court.  The Maryland Court of Appeals, the state's highest court, has already determined that the agreements are not too indefinite to be enforced. This Court does not have the authority to disturb that ruling.

Even if the Court did have the ability to consider Deere's argument, the Court would reject it.  The agreements are not too indefinite to be enforced under Maryland law.  The EDA supplies the reasonable duration for these agreements, as it does for all dealer agreements to which it applies, by providing that the agreements must

21

continue until both parties terminate them by mutual agreement or one of the statutorily enumerated good cause events occurs.  See  Md. Code Ann., Com. Law § 19-103(a) ("A supplier may not...terminate, cancel, fail to renew, or substantially change the competitive circumstances of a contract without good cause.").

###    B.    Deere's Motion to Dismiss

Deere's Motion to Dismiss is premised on its assertion that the EDA does not apply to the agreements.  This Court has already rejected this assertion and granted summary judgment for Reliable.  As a result, Deere's Motion to Dismiss is denied.

### III.    CONCLUSION

For the foregoing reasons, Reliable's Motion for Summary Judgment on Count II of its Verified Complaint is granted.  Deere's attempt to terminate the dealer agreements is unlawful, and its attempted termination is void and of no effect. Deere's Motion to Dismiss is denied.


**SO ORDERED**, this the   9th   day of June, 2009

**s/Hugh Lawson**
**HUGH LAWSON, Judge**

dhc

22